UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JINAPALA ABEYWARDENE,<br><br>       *Plaintiff*,<br><br>  v.<br><br>DOUG TULINO,<br><br>       *Defendant*. | Civil Action No. 24-2353 (SLS)<br>Judge Sparkle L. Sooknanan |

## MEMORANDUM OPINION

Jinapala Abeywardene, proceeding pro se, sued the Postmaster General of the United States in the Superior Court of the District of Columbia alleging age discrimination and a "violation of [l]abor law, unpaid wages." Am. Compl. at 3, ECF No. 6. The Defendant removed the case to this Court under 28 U.S.C. §§ 1442(a)(1) and 1446 and then moved to dismiss Mr. Abeywardene's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, the Court grants the motion and dismisses the case.[1]

### BACKGROUND

**A.    Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023). Mr. Abeywardene is proceeding pro se, so the Court will consider his Complaint "in light of all

---

[1] The Plaintiff named former Postmaster General, Louis Dejoy, as the Defendant in the Complaint. The interim Postmaster General, Doug Tulino, is "automatically substituted as a party" in his place pursuant to Federal Rule of Civil Procedure 25(d).

filings, including filings responsive to [the] motion to dismiss."[2] *Moini v. LeBlanc*, 456 F. Supp. 3d 34, 40 (D.D.C. 2020) (citation omitted).

From September 2020 to April 2021, Mr. Abeywardene was employed as a postal worker by the United States Postal Service (USPS) in Damascus, Maryland. *See* EEOC Compl. at 3, ECF No. 6-1 (page numbers designated by CM/ECF). On his first day at work, Mr. Abeywardene's supervisor, Mr. T.J., "[v]erbally [h]arassed" him and told him that he was ["t]oo old," that he was "like [Mr. T.J.'s] father," and that he "c[ouldn't] do th[e] job." *Id.* Mr. T.J. then "reduced [his] work and permitted [him] to work two days per week." *Id.* And Mr. T.J. "continued to harass [Mr. Abeywardene] every day, in, [an] aggressive manner." *Id.* For example, Mr. T.J. called Mr. Abeywardene "while [he] was driving and distributing mail," to ask where he was and accused him of being "late." *Id.* When Mr. Abeywardene complained to the USPS Union, his "[s]upervisor [r]evenged [him] by making restrictions to avoid and reduce [his] work hours." *Id.* at 4.

Mr. Abeywardene then transferred to the Germantown Post Office, where he worked from May to July 2021. *Id.* He started work on May 9, 2025, and a week later, he received a text message stating that he was "not scheduled today." *Id.* Mr. Abeywardene continued going into work "every day since . . . May 17th until June[,]" but was "not allowed to work." *Id.* at 5. It was "explained to [Mr. Abeywardene] that [he] was not scheduled," and he was "advised to contact" the supervisors in charge. *Id.* Mr. Abeywardene "called them every day[,]" but "[t]hey didn't answer." *Id.*

Mr. Abeywardene "expected [his] [w]ages payment for [his] work[,]" but he "didn't receive it until the end of May 2021." *Id.* He was told that his "[s]upervisor Mr. Robert Murillo

---

[2] Mr. Abeywardene attached several documents to his Amended Complaint, ECF No. 6, including his EEOC Complaint, at 3–9, ECF No. 6-1, screenshots of emails about his EEOC Complaint, *see id.* at 10–15, the decision on his EEOC Complaint, *see id.* at 16–19, and the EEO Investigation Report, *see id.* at 20–35.

[had] . . . taken away [his] [t]ime [s]heet[.]" *Id.* When Mr. Abeywardene contacted Mr. Robert Murillo to "complain[] that [he] didn't get paid for [his] work[,]" Mr. Murillo "forced [him] to resign to get the wages," despite Mr. Abeywardene stating that he "do[es]n't want to resign." *Id.* In July, Mr. Abeywardene had another conflict at work. "One of the [s]upervisors . . . ordered [him] to attend work on July 4, 2021." *Id.* The supervisor "shouted [at him] . . . to make a quick delivery" or threatened to fire him. *Id.* Mr. Abeywardene retorted that he "do[es] [his] delivery work quicky and correctly" and "do[es]n't want to get fired, unfairly as revenge." *Id.* It appears at some point during or after this incident, Mr. Abeywardene lost his position with USPS. *Id.* at 3. Later, on September 7, 2021, the Germantown Post Office management suggested that they "employ [Mr. Abeywardene], with additional training, without back pay." *Id.* at 6. Mr. Abeywardene saw "[t]his [as] an acceptance of guilt for unpaid pages." *Id.*

On September 30, 2021, Mr. Abeywardene filed a "[f]ormal [EEOC] [c]omplaint [for] Age Discrimination and Labor Law Violations, [and] (Unpaid Wages)[.]" *Id.* His EEOC complaint details a series of grievances about the EEOC process. *Id.* at 8–9. Mr. Abeywardene alleges the EEOC hearing judge "submitted wrong information" about him, and "wanted to dismiss [Mr. Abyewardene's] case without a reason and as a [h]elp to [the] EEO Agency." *Id.* at 9. He also accuses the "USPS Agency, EEO" of "violat[ing] [his] human rights and [l]abor rights" and "not [being] trustable." *Id.*

### B. Procedural Background

Mr. Abeywardene sued the Postmaster General on July 3, 2024, in the Superior Court of the District of Columbia. *See* Not. Rem., Compl., ECF No. 1-2. On August 14, 2024, the Defendant removed the case to this District pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446. *See* Not. Rem. at 1–2, ECF No. 1. On September 24, 2024, Mr. Abeywardene filed the operative Amended

Complaint alleging violations of the Age Discrimination in Employment Act of 1967 and "[l]abor law, unpaid wages." Am. Compl. at 3, ECF No. 6. For the "mental depression as a result of thinking and worrying [about] the harassment [] done by the USPS supervisors and unpaid wages and [t]erminations," Mr. Abeywardene seeks twenty-five thousand dollars. *Id.* at 4. On December 30, 2024, the Defendant moved to dismiss the case pursuant to the Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def.'s Mot., ECF No. 13. The following day, the Court directed Mr. Abeywardene to respond to the motion by January 30, 2025, or risk the case being dismissed. Fox/Neal Order, ECF No. 14; *see also Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988). Mr. Abeywardene filed his opposition on January 27, 2025, Pl.'s Opp'n, ECF No. 15, and the Defendant filed a reply on February 4, 2025, Def.'s Reply, ECF No. 16. The motion is fully briefed and ripe for resolution.

## LEGAL STANDARD

Courts must hold pro se pleadings to a "less stringent standard than formal pleadings" drafted by lawyers, but "need not assume the role of [their] advocate." *Mehrbach v. Citibank, N.A.*, 316 F. Supp. 3d 264, 268 (D.D.C. 2018). In other words, no matter how "inartfully pleaded" a pro se plaintiff's complaint, a court must grant him the benefit of all inferences that can flow from the facts he alleges. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A plaintiff bears the burden of establishing subject-matter jurisdiction, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–61 (1992), and this applies equally to pro se plaintiffs, *see Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993). In reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), courts must "construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005) (internal quotation marks and citations omitted).

Under Rule 12(b)(6), a court must dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an "inference[ ] ... unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## DISCUSSION

The Defendant argues that this Court lacks jurisdiction to resolve Mr. Abeywardene's claims under the Age Discrimination in Employment Act, the National Labor Relations Act, and the Fair Labor Standards Act under the doctrine of derivative jurisdiction. It also argues for dismissal of Mr. Abeywardene's complaints about the EEOC process under Rule 12(b)(6). The Court agrees. And to the extent Mr. Abeywardene is attempting to constructively amend his Complaint through his opposition brief to add a claim under the Civil Rights Act of 1991, the Court declines to permit the amendment because the claim would be futile.

### A.   Derivative Jurisdiction

Under Section 1442(a)(1), the United States, its agencies, and federal employees may remove a civil action commenced against them "in a State court," *id.*, which includes D.C. Superior Court, to a federal district court, 28 U.S.C. § 1442(d)(6). When that happens, under the doctrine of "derivative jurisdiction," the district court inherits its jurisdiction from the state court where the lawsuit originated. *See Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981); *see, e.g.*, *Palmer v. City Nat'l Bank, of West Virginia,* 498 F.3d 236, 239 (4th Cir. 2007). That is true even

if the district court would have had original jurisdiction over the lawsuit had it been filed there to begin with. *See Arizona*, 451 U.S. at 242 n.17 ("[I]f the state court lacks jurisdiction . . . the federal court acquires none upon removal, even though the federal court would have had jurisdiction if the suit had originated there.") (citing *Freeman v. Bee Mach. Co.*, 319 U.S. 488, 499 (1943)).[3]

The Court, like others in this District, acknowledges that this doctrine is counterintuitive and difficult to explain as a matter of first principles. *See Merkulov v. United States Park Police*, 75 F. Supp. 3d 126, 130 (D.D.C. 2014) ("The doctrine of derivative jurisdiction is not without criticism."); *Robinson v. United States Dep't of Health & Hum. Res.*, No. 21-cv-1644, 2021 WL 4798100, at *3 (D.D.C. Oct. 14, 2021) (calling the doctrine of derivative jurisdiction "hardly obvious") (internal citation and quotation marks omitted); *James v. United States Postal Service*, 484 F. Supp. 3d 1, 4 (D.D.C. 2020) (finding that the derivative jurisdiction doctrine can "create[] something of a paradox"). This is doubly true given that Congress abolished the doctrine for cases removed under 28 U.S.C. § 1441 but left it intact for those removed under 28 U.S.C. § 1442. *See Merkulov*, 75 F. Supp. 3d at 129–30 (explaining that while Congress eliminated derivative

---

[3] The Court notes that removal in this case might have been procedurally defective. The Defendant did not file for removal within 30 days of receiving "a copy of the initial pleading" through "service or otherwise," as required by 28 U.S.C. § 1446(b)(1). *See* Not. Rem. at 1, ("Defendant is in receipt of a Complaint" filed on July 3, 2024, in the D.C. Superior Court, and the Defendant removed this case on August 14, 2024), ECF No. 1. But "'a procedural defect in removal does not affect the federal court's subject matter jurisdiction and therefore may be waived.'" *Franklin v. Soc. Sec. Admin.*, No. 24-cv-1233, 2024 WL 4854035, at *1 n.1 (D.D.C. Nov. 21, 2024) (quoting *Ficken v. Golden*, 696 F. Supp. 2d 21, 26 (D.D.C. 2010) (cleaned up) and citing *Farina v. Nokia Inc.*, 625 F.3d 97, 114 (3d Cir. 2010) ("It is well settled that § 1446(b)'s thirty-day time limit for removal is a procedural provision, not a jurisdictional one.")). And Mr. Abeywardene has not moved to remand this case under 28 U.S.C. § 1447(c), so he has waived or forfeited any objections to this procedural defect. *Id.* (citing *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 42 (D.D.C. 2012) ("It is settled law that an untimely removal constitutes a defect in the removal process, and that a remand based upon such a defect is encompassed by section 1447(c)."); *see also* 28 U.S.C. § 1447(c) (providing that motions to remand on the basis of "any defect other than lack of subject matter jurisdiction" must be filed within 30 days of removal).

jurisdiction as a barrier to removals by 28 U.S.C. § 1441, "[f]ederal courts in this District, and throughout the country, have determined that the doctrine of derivative jurisdiction still applies to claims removed under Section 1442" (collecting cases)). As it stands, and for no good reason, a defendant can predetermine a federal court's jurisdiction by choosing to remove a case under § 1442 rather than § 1441.

Because the Defendant removed this case under Section 1442, derivative jurisdiction applies. And if the D.C. Superior Court lacked jurisdiction over Mr. Abeywardene's claims, "so too would this [C]ourt." *Franklin v. Soc. Sec. Admin.*, No. 24-cv-1233, 2024 WL 4854035, at *1 (D.D.C. Nov. 21, 2024). This is true even though Mr. Abeywardene filed an Amended Complaint after removal, because the Defendant asserted the doctrine of derivative jurisdiction in its "very first responsive pleading" in this Court before any "substantive issues were decided." *Ricci v. Salzman*, 976 F.3d 768, 772 (7th Cir. 2020); *compare id.*, *with Rodas v. Seidlin*, 656 F.3d 610, 614 (7th Cir. 2011) (where the defendants did not raise the doctrine of derivative jurisdiction until *after* judgement was entered on the case). When a "defendant timely raises the derivative jurisdiction doctrine, it erects a mandatory bar to the court's exercise of federal jurisdiction, and a plaintiff cannot circumvent that bar merely by filing an amended complaint invoking federal jurisdiction." *Ricci*, 976 F.3d at 773; *see also Goodwill v. eTitle Ins.* Agency, No. 21-4108, 2022 WL 1741595, at *2 n.3 (10th Cir. May 31, 2022) (same). If the D.C. Superior Court lacked jurisdiction, this Court cannot "acquire" any upon removal. *Cofield v. United States*, 64 F. Supp. 3d 206, 214 (D.D.C. 2014) (citing *Lambert Run Coal Vo v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922)).

### 1. Age Discrimination in Employment Act (ADEA)

Mr. Abeywardene's Complaint alleges age discrimination in violation of the ADEA. Claims under the ADEA must be brought "in any Federal district court of competent

jurisdiction[.]" 29 U.S.C. § 633a(c). But this case was first brought in the D.C. Superior Court, which did not have subject matter jurisdiction to resolve the ADEA claim. *See, e.g.*, *Canonica v. United States*, 41 Fed. Cl. 516, 523 (1998) (noting that exclusive jurisdiction over ADEA claims rests with federal district courts). Because this Court acquired the jurisdiction of the D.C. Superior Court when the Defendant removed this lawsuit, it also lacks jurisdiction over the ADEA claim and must dismiss it under Rule 12(b)(1). *See, e.g.*, *Copley v. Dep't of Energy*, No. 11-0416, 2012 WL 1111568, at *8–9 (S.D. W. Va. Mar. 30, 2012) (dismissing ADEA claim because "Congress clearly intended exclusive federal jurisdiction when the United States or its agencies are sued for alleged violations of the ADEA"); *Chin-Young v. United States*, No. 16-cv-544, 2016 U.S. Dist. LEXIS 195732, at *19 (E.D. Va. Oct. 4, 2016) (dismissing ADEA claim because the underlying state court "would not have possessed jurisdiction over the claim") .

### 2. National Labor Relations Act (NLRA)

Mr. Abeywardene also alleges a "violation of [l]abor law, unpaid wages." Am. Compl. at 3. He claims that after he complained to the USPS Union, his "[s]upervisor [r]evenged [him] by making restrictions to avoid and reduce [his] work hours." EEOC Compl. at 3. The Court liberally construes this claim as arising under Section 8(a)(1) of the NLRA, which provides in relevant part that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1); *see also Dougherty v. United States*, 156 F. Supp. 3d 222, 230 (D.D.C. 2016) ("It is well established that the pleadings of pro se parties are to be 'liberally construed.'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Generally, "the National Labor Relations Board [NLRB] has exclusive primary jurisdiction over claims involving unfair labor practices." *Price v. Unite Here Local 25*, 883 F. Supp. 2d 146,

154 (D.D.C., 2012), *aff'd*, No. 12-cv-7089, 2013 WL 1267137 (D.C. Cir. Mar. 22, 2013); *Washington Service Contractors Coalition v. District of Columbia*, 54 F.3d 811, 815 (D.C. Cir. 1995) ("When a [labor practice] is arguably [protected or prohibited by §§ 7 or 8 of the NLRA], the States as well as the federal courts must defer to the exclusive competence of the [NLRB.]" (quoting *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245 (1959)); *see also Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83 (1982) ("The [National Labor Relations] Board is vested with primary jurisdiction to determine what is or is not an unfair labor practice. As a general rule, federal courts do not have jurisdiction over activity which is arguably subject to § 7 or § 8 of the NLRA." (internal quotation marks omitted)). Thus, assuming Mr. Abeywardene sought to bring an NLRA claim when he filed his lawsuit in the D.C. Superior Court, that court lacked jurisdiction over the claim and this Court must dismiss it under Rule 12(b)(1) under the doctrine of derivative jurisdiction. *See McCain v. Soc. Sec. Admin.*, No. 23-cv-3288, 2023 WL 9023171, at *2 (D.D.C. Dec. 29, 2023) ("Because the Superior Court lacked jurisdiction over plaintiff's claims, this Court acquires none upon removal pursuant to 28 U.S.C. § 1442.").

There are "limited circumstances" where a federal court might have jurisdiction over unfair labors claims. *Price*, 883 F. Supp. 2d at 154; *see, e.g.*, *United Elec., Radio and Mach. Workers of Am. v. Gen. Elec. Co.*, 231 F.2d 259, 261 (D.C. Cir. 1956) ("An employee discharged in violation of a collective bargaining contract may have a claim that is judicially enforceable."); *Marquez v. Screen Actors Guild,* 525 U.S. 33, 49 (1998) ("[W]hen a plaintiff alleges a breach of the duty of fair representation, the claim is cognizable in the first instance in federal court."). But Mr. Abeywardene has not pled any facts to support such a claim.

### 3. Fair Labor Standards Act (FLSA)

Mr. Abeywardene also claims a violation of "unpaid wages," Am. Compl. at 3, which the Court liberally construes as arising under the Fair Labor Standards Act (FLSA). *See Dougherty*, 156 F. Supp. 3d at 230 ("It is well established that the pleadings of pro se parties are to be 'liberally construed'[.]") (quoting *Erickson*, 551 U.S. at 94). Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours[.]" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). A lawsuit under the FLSA must be brought "in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b). The D.C. Circuit has held that this section is "nonjurisdictional" such "that it assumes a grant of jurisdiction elsewhere." *Montes v. Janitorial Partners, Inc.*, 859 F.3d 1079, 1084 (D.C. Cir. 2017); *cf., e.g.*, *Zumerling v. Devine*, 769 F.2d 745, 749 (Fed. Cir. 1985) (holding that the FLSA "require[s] one to look elsewhere to find out what court, if any, has jurisdiction"). And the United States has not explicitly waived its sovereign immunity in the D.C. Superior Court. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature.").

The Little Tucker Act and its companion statute, the Big Tucker Act, waive sovereign immunity for certain monetary claims against the United States. 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491(a)(1). But neither grant the D.C. Superior Court subject-matter jurisdiction over FLSA claims. The Little Tucker Act "grants United States district courts concurrent jurisdiction with the United States Court of Federal Claims over civil actions or claims against the United States not exceeding $10,000 in amount[.]" *Waters v. Rumsfeld*, 320 F.3d 265, 270 (D.C. Cir. 2003) (quoting 28 U.S.C. § 1346(a)(2)). And under the Big Tucker Act, claims "exceeding the $10,000

jurisdictional ceiling . . . are within the exclusive jurisdiction of the Court of Claims." *Waters*, 320 F.3d at 270 (quoting *Goble v. Marsh,* 684 F.2d 12, 15 (D.C. Cir. 1982)). FLSA claims must therefore be brought either in the Court of Federal Claims or a federal district court.

Mr. Abeywardene did neither. He filed suit in the D.C. Superior Court seeking twenty-five thousand dollars in damages, *see* Am. Compl. at 4, even though the Court of Federal Claims had exclusive jurisdiction over such an FLSA claim, *see Waters*, 320 F.3d at 270; *see, e.g.*, *Adair v. Bureau of Customs & Border Prot.*, 191 F. Supp. 3d 129, 134 (D.D.C. 2016); *Alston v. Bethea*, No. 22-cv-3595, 2023 WL 4198203, at *3 (D.D.C. June 27, 2023). Because the D.C. Superior Court lacked jurisdiction, the same is true of this Court and it must dismiss the claim under Rule 12(b)(1) under the derivative jurisdiction doctrine. *See, e.g.*, *Carrasco v. US Census Department Green Bay Office HR Department*, No. 21-0208, 2022 WL 394996, at *2 (E.D. Wis. Feb. 9, 2022) (dismissing FLSA claim under the derivative jurisdiction doctrine).[4]

### B.  The Civil Rights Act of 1991

Mr. Abeywardene appears to plead an additional cause of action under the "Civil Rights Act of 1991" in opposing dismissal. Pl.'s Opp'n at 1. While courts generally do not consider claims raised for the first time in opposition briefs, *see Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) ("It is 'axiomatic' that a party may not amend his complaint through an

---

[4] The Defendant argues that *United States v. Bormes*, 568 U.S. 6, 19 (2012), implicitly changes the jurisdictional playing field for FLSA claims. Def.'s Mot at 6. It contends that after *Bormes*, "FLSA damages claims, including those seeking more than $10,000, should be heard in district court." *Id.* at 7. The Federal Circuit and courts in this District disagree. *See, e.g.*, *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014); *Alston v. Bethea*, No. 22-cv-3595, 2023 WL 4198203, at *3 (D.D.C. June 27, 2023); *Atta v. Consumer Fin. Prot. Bureau*, No. 18-cv-2033, 2019 WL 13292029, at *2 (D.D.C. Apr. 29, 2019); *Johnson v. Lightfoot*, 273 F. Supp. 3d 278, 287–88 n.5 (D.D.C. 2017); *Adair v. Bureau of Customs & Border Prot.*, 191 F. Supp. 3d 129, 133 (D.D.C. 2016). The Court declines to weigh in on this question. Because the D.C. Superior Court lacked jurisdiction over any FLSA claim, this Court also lacks jurisdiction.

opposition brief."), a pro se plaintiff may constructively amend the complaint in certain circumstances, *see Richardson v. United States,* 193 F.3d 545, 548–50 (D.C. Cir. 1999); *Carter v. Dep't of the Navy*, No. 05-cv-0775, 2006 WL 2471520, at *5–6 (D.D.C. Aug. 24, 2006). But constructive amendment is not appropriate if the pro se plaintiff seeks to add a claim that would not survive a motion to dismiss. *See, e.g.*, *Heard v. Dep't of State*, No. 08-cv-02123, 2010 WL 3700184, at *7–8 (D.D.C. Sept. 17, 2010); *Wilson v. Cox*, 828 F. Supp. 2d 20, 35 (D.D.C. 2011), *aff'd in part,* No. 12-5070, 2012 WL 5896961 (D.C. Cir. Oct. 19, 2012), and *rev'd and remanded,* 753 F.3d 244 (D.C. Cir. 2014).

Mr. Abeywardene's constructive amendment would be futile. Even applying a liberal pleading standard, *see Erickson*, 551 U.S. at 94, any claim under the Civil Rights Act of 1991 would not survive a motion to dismiss. Under that statute, a plaintiff may recover compensatory and punitive damages for violations of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 1981(a)–(c). But Mr. Abeywardene's Complaint alleges discrimination on the basis of his age. *See* EEOC Compl. at 3 (Mr. Abeywardene's supervisor saying to him that he was "[t]oo [o]ld" and "like [his] father"). And "[t]he ADEA provides an exclusive remedy for [age] discrimination claims brought by federal employees." *Chennareddy v. Dodaro*, 698 F. Supp. 2d 1, 21 n.26 (D.D.C. 2009), *aff'd sub nom. Davis v. Dodaro*, No. 10-5044, 2010 WL 3199827 (D.C. Cir. Aug. 10, 2010); *see also Classen v. Brown*, No. 94-cv-1018, 1996 WL 79490, at *4 (D.D.C. Feb. 16, 1996); *Rattner v. Bennett*, 701 F. Supp. 7, 9 (D.D.C. 1988). Mr. Abeywardene thus cannot move forward with an age discrimination claim under the Civil Rights Act of 1991. And as explained above, this Court lacks jurisdiction over Mr. Abeywardene's ADEA claim. *See supra,* at 7–8.

**C.     EEOC Process**

Finally, although it is far from clear, Mr. Abeywardene appears to challenge the EEOC process itself. In his EEO Complaint, Mr. Abeywardene alleges that the "USPS Agency, EEO violate[d] [his] human rights and [l]abor rights" and is "not trustable." EEOC Compl. at 9; *see also id.* (alleging that the EEOC hearing judge "submitted wrong information" about him and "wanted to dismiss [Mr. Abyewardene's] case without a reason and as a [h]elp to [the] EEO Agency"). But any claim challenging the EEOC process is not cognizable. "[A]llegations of an agency's improper processing of an administrative complaint do not support an actionable claim." *Koch v. White*, 967 F. Supp. 2d 326, 336 (D.D.C. 2013) (citing *Smith v. Casellas*, 119 F.3d 33, 34 (D.C. Cir. 1997)). A plaintiff must instead initiate a lawsuit in federal court based on the underlying claims in the EEO complaint. *See Koch*, 967 F. Supp. 2d at 336; *see also Jordan v. Summers*, 205 F.3d 337, 342 (7th Cir. 2000) (holding that plaintiffs have no claim against their employer agency EEO office for failing to process a discrimination claim); *cf. Wright v. Dominguez*, No. 04-cv-5055, 2004 WL 1636961, at *1 (D.C. Cir. July 21, 2014) (explaining that "de novo review provides an adequate remedy . . . for complaints about the EEOC's administrative process"); 29 C.F.R. § 1614.107(a)(8) (an agency shall dismiss an administrative complaint "[t]hat alleges dissatisfaction with the processing of a previously filed complaint"). So to the extent Mr. Abeywardene is challenging his EEOC process, that claim fails under Rule 12(b)(6). *See Smith*, 119 F.3d at 34 ("Congress has not authorized, either expressly or impliedly, a cause of action against the EEOC for the EEOC's alleged negligence or other malfeasance in processing an employment discrimination charge.").

***

As the Court has acknowledged, the derivative jurisdiction doctrine is counterintuitive. And to a pro se plaintiff like Mr. Abeywardene, it may appear confusing and harsh.

Mr. Abeywardene filed an ADEA claim in D.C. Superior Court that only this Court had the power to resolve. But because the Defendant chose to remove the case under § 1442, this Court inherits the Superior Court's jurisdiction and now lacks the authority to resolve the claim. The Court, of course, has no power to overlook jurisdictional defects. But Mr. Abeywardene is not without recourse, as he may still file his claims in the proper forum.

## CONCLUSION

For these reasons, the Court grants the Defendant's Motion to Dismiss, ECF No. 13. A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date:   May 13, 2025